SO ORDERED.

DONE and SIGNED September 18, 2023.



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

___

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| IN RE: | § | Case Number: 23-10189 |
|---|---|---|
|  | § |  |
| Jason N. Litton | § | Chapter 13 |
| Jennifer H. Litton | § |  |
| Debtors | § |  |

**Memorandum Ruling**

The chapter 13 trustee objects to the plan because it does not pay all of Debtors' disposable income to creditors. The trustee challenges the calculation of Debtors' disposable income.

When calculating disposable income, the Bankruptcy Code permits an above-median debtor to deduct amounts specified in tables prepared by the Internal Revenue Service which list standardized expense amounts for various categories of necessities. At issue in this case is the category for Transportation "Ownership Costs" which encompasses the costs of a vehicle loan or lease.

Prior to the petition date, Debtors used their lien-free vehicle as collateral to

secure a loan to obtain cash. The trustee argues that it is improper for Debtors to claim a deduction using the amount specified in the Ownership Costs category because the loan proceeds did not enable them to acquire rights in the vehicle. According to the trustee, payments on a nonpurchase-money obligation do not correspond to the Transportation Ownership Costs category and therefore are not deductible.

The court agrees with the trustee. The objection is sustained.

## Background

The facts are not in dispute. On February 28, 2023, Jason N. Litton and Jennifer H. Litton (collectively "**Debtors**") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. The only asset at issue is their 2006 Ford F-150 valued at $5,000.00 and encumbered by a lien securing a nonpurchase-money loan.

Debtors acquired the truck nine years before filing a bankruptcy petition. They borrowed money to acquire it and later paid off the loan. Approximately thirteen months prior to the petition date, Debtors borrowed $4,621.50 from their credit union and granted a security interest in their truck to secure the loan. Debtors executed a loan agreement promising to pay the principal together with interest accruing at 9.25% per annum until paid in full. The loan agreement requires 75 biweekly payments. The credit union holds a properly perfected nonpossessory, nonpurchase-money security interest in the truck. On the petition date, Debtors owed their credit union $3,750.00 for the loan.

Debtors earn an income that is above the median for their State. As such,

they are required to use Official Form 122C-2 to calculate their monthly disposable income. The calculations on this form—sometimes called the "means test"—reduce a debtor's income by living expenses and payment of certain debts, resulting in the amount available to pay unsecured debts.

When performing the means test, Debtors claimed three deductions related to their vehicle: 1) the average monthly payment owed to the credit union for the debt secured by their vehicle; 2) the standardized monthly amount allowed by the IRS for "Operating Costs" of a vehicle; and 3) the standardized monthly amount allowed by the IRS for "Ownership Costs" of a vehicle. No party challenges the deductions for the monthly debt payments or for operating expenses. The trustee, however, challenges the deduction for ownership expenses.

The trustee objects to the plan on the ground that it fails to pay all of Debtors' disposable income to unsecured creditors. According to the trustee, the plan shortchanges creditors by $534.80[1] each month or $32,088.00 over the life of the 60-month plan.

## Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409. This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

---

[1] Debtors entered $534.80 on Line 13c of Official Form 122C-2 for the net vehicle ownership or lease expense representing the difference between the average monthly secured debt payment of $53.20 and $588.00, the amount specified in the Ownership Costs category of the relevant IRS Standards.

## Conclusions of Law and Analysis

In a chapter 13 bankruptcy, a debtor must file a plan providing for future payment of his creditors. 11 U.S.C. § 1322. The plan must be "proposed in good faith and by means not forbidden by law." § 1325(a)(3). If the trustee objects to the plan, it cannot be confirmed unless it either provides for full payment of creditors' claims or provides for all the debtor's projected disposable income to be distributed to creditors. § 1325(b)(1).

The Bankruptcy Code does not provide a definition of *projected* disposable income. *Hamilton v. Lanning*, 560 U.S. 505, 509 (2010). Disposable income, however, is defined in the Code to mean "current monthly income received by the debtor ... less amounts reasonably necessary to be expended." § 1325(b)(2). For a debtor whose income is above the median for his State, the Code instructs that "[a]mounts reasonably necessary to be expended ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." § 1325(b)(3).

The Code identifies which expenses qualify as "amounts reasonably necessary to be expended." As relevant here, the Code provides that:

> The debtor's monthly expenses shall be the debtor's **applicable** monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor ....

§ 707(b)(2)(A)(ii)(I) (emphasis added).

The key word in this provision is "applicable." Under the statute, a debtor may claim only "applicable" expense amounts listed in the National and Local IRS

Standards. The National and Local Standards are "tables that the IRS prepares listing standardized expense amounts for basic necessities." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 66 (2011). The Local Standards include an allowance for transportation expenses, divided into vehicle "Ownership Costs" and "Operating Costs." The issue in this case is whether the amounts listed under the Ownership Costs category are "applicable" to Debtors. No one challenges Debtors' deduction for the amounts specified under the Operating Costs category.

In *Ransom*, the Supreme Court examined issues related to the Ownership Costs category. In that case, the debtor owned a car free and clear of liens. In performing the means test, Ransom claimed a deduction for vehicle ownership expenses. He argued that the vehicle ownership category in the IRS table was applicable to him because he owned a car. A creditor objected. The Court determined that an expense amount from the IRS table is "applicable" if it corresponds to a debtor's financial circumstances. Congress established a filter, permitting a debtor to claim a deduction from the IRS table only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor "has costs corresponding to the category covered by the table" and will "incur that kind of expense during the life of the plan." 562 U.S. at 70. The Court then determined that the vehicle "ownership category encompasses the costs of a car loan or lease and nothing more." *Id*. at 71. Because Ransom did not incur a loan or lease payment, the vehicle ownership category in the IRS tables was not applicable to him.

Applying *Ransom's* principles to this case, there are two central questions.

First, what expenses are covered by the Ownership Costs category in the IRS table? Second, will Debtors incur "costs corresponding to the category covered by the table" during the life of their plan? *Ransom*, 562 U.S. at 70. A debtor can only claim an allowance under the IRS tables if he will incur the type of expenses listed in a category covered by the table.

To determine the types of expenses that are covered by the IRS table and to ascertain whether Debtors will incur those expenses, the court must begin its analysis with the text of the table. The table features a category for Allowable Transportation Expenses labeled "Ownership Costs" which, in turn, has two columns labeled "One Car" and "Two Cars" and an amount listed in each column. Standing alone, the table does not specify what the amounts represent or identify the data that was used to calculate them. As the Court observed, the tables "are not self-defining," and "[s]ome amount of interpretation" is necessary in choosing whether to claim a deduction at all. *Ransom,* 562 U.S. at 76-77. To interpret the tables, the Court turned to the IRS's Collection Financial Standards[2] which explain how to use the tables and what the amounts listed in them mean. *Id*. "[O]ne cannot really 'just look up' dollar amounts in the tables without either referring to IRS guidelines for using the tables or imposing pre-existing assumptions about how [they] are to be navigated." *Id*. (alterations in original) (quoting *In re Kimbro,* 389 B.R. 518, 533 (6th Cir. BAP 2008) (Fulton, J., dissenting)).

---

[2] The Collection Financial Standards are web-based: https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (all websites lasted visited September 18, 2023).

Relying on the IRS guidelines, the Supreme Court concluded that "the numerical amounts listed in the 'Ownership Costs' table are 'base[d] on the five-year average of new and used car financing data compiled by the Federal Reserve Board.'" *Ransom*, 562 U.S. at 71 (citing Resp. Br. App. 3a) (alteration in original).[3] "In other words, the [amount specified] is the average monthly payment for loans and leases nationwide..." *Id.* at 72. The Supreme Court reached this conclusion based on its review of the 2006 version of the Collection Financial Standards. Copies of the Collection Financial Standards from 2006 through 2023 are in the record of this case at docket no. 27. Each version contains a "Recent Revisions" heading. The revisions do not indicate that the IRS made any changes to its methodology for determining the amounts for Ownership Costs. Accordingly, this court concludes that the amounts listed in the current Ownership Costs table are based on the five-year average of new and used car financing data.

According to the trustee, "financing" a car implies providing the money for its acquisition. He argues that Ownership Costs represent the average monthly payment for *acquisition* loans nationwide, not equity loans where a vehicle is used as collateral to secure a loan to obtain cash which can be used for any purpose, including a purpose that is not reasonably necessary. In support, he cites the Collection Financial Standards which state that the Ownership Costs category

---

[3] The Appendix sets forth the Collection Financial Standards in effect at the time Ransom filed his bankruptcy petition. The quoted language appears under the heading "Recent Revisions," which notes that the Local Standards for transportation were revised on February 1, 2006, to base ownership/leasing costs on Federal Reserve data as stated in the text.

represents "nationwide figures for monthly loan or lease payments" and provides the "maximum allowances for the *lease or purchase* of up to two automobiles if allowed as a necessary expense." Collection Financial Standards, https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (emphasis added).

The trustee's understanding of "financing" as used in this context is consistent with the releases of statistical information compiled by the Board of Governors of the Federal Reserve System. The releases provide statistical data for new and used car loans from commercial banks and finance companies. The monthly releases identify the average interest rates for car loans, maturity of the loans, and the average amount financed. *See* Consumer Credit Report (G.19 release, http://www.federalreserve.gov/releases/g19/), Finance Companies Report (G.20 release, http://www.federalreserve.gov/releases/g20/). The referenced websites contain sufficient statistical information to calculate the five-year average of a nationwide amount for a monthly car loan payment.

To prepare the releases, the Federal Reserve compiles data from various sources.[4] As relevant here, the data expressly exclude, or separately classify, loans made to consumers for nonpurchase-money obligations. For example, the G.19 release includes data contained in Form FR 2644. The form's instructions require

---

[4] For a description of the underlying data compiled by the Federal Reserve for its G.19 Consumer Credit Report and G.20 Finance Companies Report, see https://www.federalreserve.gov/releases/g19/about.htm, https://www.federalreserve.gov/releases/g20/about.htm.

separate disclosure of loans "extended for the purpose of purchasing new and used passenger cars and other vehicles" *excluding* "consumer loans secured by automobiles already paid for."[5] The G.19 release also includes data from a mandatory report, FFIEC 031, filed by every domestic depository institution which requires separate disclosure of "all consumer loans extended for the purpose of purchasing new and used passenger cars and other vehicles," excluding "consumer loans where the purchase of an automobile is not the primary purpose of the loan."[6] Similarly, the G.20 release includes data from finance companies using Form FR 2248. That form's instructions require disclosure of "Consumer Motor Vehicle Loans" "arising from the retail sales of vehicles" excluding "personal cash loans secured by automobiles *already paid for*."[7] *See also* "Automobile Loans to Individuals for Household, Family, and Other Personal Expenditures (i.e. Consumer Loans)," Federal Reserve Micro Data Reference Manual, Data Dictionary Item Number K137 (listing multiple reporting forms used by the Federal Reserve for its compilation of statistical data for automobile loans and stating that banks are instructed to "exclude from automobile loans any personal cash loans secured by automobiles already paid for and consumer loans where some of the proceeds are used to purchase an automobile and the remainder of the proceeds are used for

---

[5] https://www.federalreserve.gov/apps/reportingforms/Report/Index/FR_2644, Item 4.d.(2).

[6] https://www.ffiec.gov/forms031.htm, Schedule RC-C, Item 6.c.

[7] https://www.federalreserve.gov/apps/reportingforms/Report/Index/FR_2644. Item 3.b. (emphasis in original).

other purposes.").[8]

Debtors counter by arguing that this court should refrain from considering the Collections Financial Standards because the Standards were created by the IRS to help determine a taxpayer's ability to pay a delinquent tax liability, not to interpret the Bankruptcy Code. They also argue that this court should not rely on the statistical information compiled by the Federal Reserve. Instead, they argue that the court should resolve this matter by looking at the Bankruptcy Code alone. The Code, however, does not mention a deduction for vehicle ownership expenses. Standing alone, the Code does not resolve the issue in dispute.

The Code incorporates the "National Standards and Local Standards" issued by the IRS, and it allows a debtor to deduct his "applicable monthly expense amounts specified under" those Standards. § 707(b)(2)(A)(ii). To determine whether a particular Local Standard is "applicable" to a particular debtor, the court *must* identify the categories of expenses that the Standards cover. The Collection Financial Standards explain how the amounts listed in the table were derived and the source of the data used to calculate them. That is why the Supreme Court expressly authorized bankruptcy courts to look to the Collections Financial Standards to identify the expenses that a debtor may deduct. *Ransom*, 562 U.S. at 71 ("Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards.").

---

[8] https://www.federalreserve.gov/apps/mdrm/data-dictionary/search/item?keyword=K137&show_short_title=False&show_conf=False&rep_status=All&rep_state=Opened&rep_period=Before&date_start=20190808&date_end=20190808,

The Supreme Court made clear that the IRS guidelines "cannot control if they are at odds with the statutory language." *Id*. at 72 (emphasis added). Here, the guidelines are not at odds with the statute. Instead, the IRS's authoritative explanation of its Local Standards assists the court in properly applying those Standards. The court can and does give weight to those explanations without improperly disregarding the text of the Bankruptcy Code. The statements by the IRS about its Ownership Costs category are relevant to the proper interpretation of the pertinent statutory language. Those statements establish that the "expense amounts specified under the" vehicle ownership Local Standard are not "applicable" to Debtors' circumstance because those expense amounts pertain to a category of costs that they do not incur.

Debtors' strongest argument is that the calculation of their monthly disposable income is entitled to a presumption of correctness because they followed all instructions for the Official Form used for the means test. That form makes no mention of a purchase-money loan. Instead, it instructs: "Using the IRS Local Standards, calculate the ownership or lease expense for each vehicle below. You may not claim the expense if you do not make any loan or lease payments on the vehicle." Official Form 122C-2, Line 13. As Debtors see it, Line 13 applies to them because they "make loan or lease payments on the vehicle." Debtors argue that they did what the form instructs by inserting the standardized amount from the tables.

That argument is not without force because an above-median debtor is *required* to use Official Form 122C-2 to calculate his monthly disposable income. §

1325(b)(3); Fed. R. Bankr. P. 1007(b)(6). Official Forms are prescribed by the Judicial Conference of the United States and must be used "without alteration." Fed. R. Bankr. P. 9009(a). Federal law, however, prohibits an Official Form from being interpreted as altering the meaning of "applicable" in § 707(b)(2)(A)(ii)(I). 28 U.S.C. § 2075 (Federal Rules of Bankruptcy Procedure "shall not abridge, enlarge, or modify any substantive right"); *In re Beaty,* 306 F.3d 914, 924 (9th Cir. 2002) ("[A] Bankruptcy Rule cannot create an exception to the Bankruptcy Code ...") (internal quotation omitted). Instead, national or local forms are only valid to the extent that they conform to the substantive provisions of the Bankruptcy Code. An Official Form cannot stand as independent authority in opposition to the Bankruptcy Code itself. Thus, to the extent that the form can be interpreted as allowing a deduction using the amount specified under the Ownership Costs category when the debtor has a nonpurchase-money vehicle loan, such interpretation is incompatible with the Bankruptcy Code.

Although courts are divided on the issue of whether a debtor may deduct the amounts specified under the Ownership Costs category when he owns a vehicle encumbered solely by a nonpurchase-money security interest, the majority view is that the deduction is improper. *See In re Traylor*, 595 B.R. 419, 425 (Bankr. D. Utah 2019) ("[N]on-purchase money loans, such as title loans, are not an applicable monthly expense specified under the IRS Local Standards."); *Feagan v. Townson*, 572 B.R. 785, 789 (N.D. Ga. 2016) ("[P]ayments on account of nonpurchase-money security interests do not fall within the category of Ownership Costs."); *In re King*,

497 B.R. 161, 164 (Bankr. N.D. Ga. 2013) ("Since the Ownership expense figure is based on only financing data and not the entire panoply of automobile loans, this IRM instruction, which the Supreme Court identified with approval, appears to indicate that the ownership expense likewise only applies to the costs associated with an automobile's acquisition."); *In re Alexander*, No. 12-40408-JWV13, 2012 WL 3156760, at *3 (Bankr. W.D. Mo. Aug. 1, 2012) ("In sum, the Court holds that the vehicle ownership expense established by the I.R.S. and incorporated into the means test (§ 707(b)(2)) and, by extension, the calculation of disposable income under § 1325(b), refers solely to expenses related to the purchase or lease of a vehicle."); *In re Sires*, 511 B.R. 719, 725 (Bankr. S.D. Ga. 2014) ("[O]wnership cost not associated with the purchase or lease of a vehicle are not appropriate ownership deductions on line 28 of the means test.").

## Conclusion

The expense amounts listed in the Ownership Costs category are applicable to a debtor only if he incurs monthly expenses associated with acquiring use of the vehicle, either through a lease or a purchase-money loan. Here, Debtors do not have a lease or a purchase-money loan and therefore do not incur a qualifying expense to properly claim the deduction. As the Supreme Court noted, "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Ransom,* 562 U.S. at 70–71.

The trustee's objection to the plan is sustained. The plan cannot be confirmed. The court will enter a separate order in accordance with this ruling.

###